**UNITED STATES of America, Plaintiff, Appellant,**

v.

**Owen M. RYE, Defendant, Appellee.**

**No. 75–1242.**

United States Court of Appeals, First Circuit.

March 2, 1977.

Wynette J. Hewett, Atty., Tax Div., Dept. of Justice, Washington, D. C., with whom Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., Boston, Mass., Gilbert E. Andrews, and Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for plaintiff, appellant.

Owen M. Rye, pro se.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The sole issue in this appeal is whether the government's lien for unpaid taxes, *see*

26 U.S.C. § 6321, can attach to a taxpayer's right to receive support payments pursuant to a divorce decree. The facts are set forth in the district court's opinion, 390 F.Supp. 528 (D.Mass.1975).

The government brought suit in the district court seeking a judgment against appellee's ex-wife for assessed tax liabilities, and foreclosure of federal tax liens upon all of her property and rights to property, including her right to receive support payments from appellee.[1] The district court entered judgment for the government against the taxpayer, but, holding that under Massachusetts law her right to support payments was not "property" or a "right to property" to which a federal tax lien could attach, dismissed all claims against appellee. The government appeals from the latter part of the court's order.

■ We agree with the district court that whether the taxpayer's right to support payments is "property" or a "right to property" must be determined by reference to state law. The federal law "creates no property rights but merely attaches consequences, federally defined, to rights created under state law", *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). *See also Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Thus we must analyze the rights that Massachusetts recognizes in court-decreed support payments, and determine whether these rights amount to "property" or a "right to property" under federal law. *See* Note, *Property Subject to the Federal Tax Lien*, 77 Harv.L.Rev. 1485, 1487–91 (1964). *Cf. Randall v. Nakashima & Co., Ltd.*, 542 F.2d 270, 272–73 (5th Cir. 1976).

A Massachusetts court may enforce judgments for alimony or support "in the same manner it may enforce judgments in equity." M.G.L.A., c. 208, § 35. Thus the support obligation may be enforced by execution, *Knapp v. Knapp*, 134 Mass. 353 (1883), or by contempt, *Slade v. Slade*, 106 Mass. 499 (1871); *cf. Pur-Shahriari v. Pur-Shahriari*, 355 Mass. 632, 633, 246 N.E.2d 677 (1969). While the "liability for unpaid alimony may not, strictly speaking, be a debt within the legal meaning of that word" it "gives to the wife in proceedings [against the estate of her deceased husband] the right as a creditor to enforce payment in the same manner and to as great an extent as if she were a creditor in the most exact sense of that word." *McIlroy v. McIlroy*, 208 Mass. 458, 464–65, 94 N.E. 696, 699 (1911).

■ Thus Massachusetts law creates in this context an enforceable right to a sum of money. Ordinarily, such an interest is a "right to property" for purposes of a federal tax lien. *See generally*, Plumb, *Federal Tax Liens* at 21 (1972); Note, *supra*, 77 Harv.L.Rev. at 1491–97. The IRS has long maintained that alimony payments are subject to the federal tax lien, Rev.Rul. 89, 1953–1 Cum.Bull. 474, and the one federal court that has addressed this issue agreed. *United States v. Russell*, 74–2 U.S.T.C. ¶ 9540 (D.Conn.1974).

■ However, the district court relied on two other attributes of the Massachusetts support obligation in determining that it did not create a "right to property", 390 F.Supp. at 529: the right is not assignable;[2] and it is subject to modification both as to future payments and as to arrearages, M.G.L.A., c. 208, § 37 (1976 Supp.); *Watts v. Watts*, 314 Mass. 129, 133, 49 N.E.2d 609 (1943). The impact of such attributes was not addressed in *United States v. Russell, supra*, but, applying the reasoning of cases dealing with spendthrift trusts and trusts for support, we find that the factors relied on by the district court do not reduce the taxpayer's proprietary interests in the Massachusetts support obligation

---

1. The government also sought judgment against appellee for failure to honor a levy on a support payment made in 1969, *see* 26 U.S.C. § 6332(c), but the government does not appeal from the dismissal of this claim.

2. We have been cited to no Massachusetts authority on this point, but will assume that the district court was correct in asserting that the right to support payments is not assignable.

below a level that can be reached by a federal tax lien.

■ In the area of spendthrift trusts, the courts have consistently held that a restraint on transferability, whether arising from the trust instrument or from state law, does not immunize the beneficiary's interest from a federal tax lien. *United States v. Dallas National Bank*, 152 F.2d 582, 585 (5th Cir. 1946); *Mercantile Trust v. Hofferbert*, 58 F.Supp. 701, 705 (D.Md. 1944). Since such a restraint is merely a state-created exemption from the reach of creditors, and not an aspect of the substantive right, it cannot serve to defeat the federal tax lien. *Leuschner v. First Western Bank and Trust Co.*, 261 F.2d 705, 708 (9th Cir. 1958). *See* Note, *supra*, 77 Harv.L. Rev. at 1489.

■ With respect to the fact that the judgment for support can be modified at any time upon application of either party, we note first that modification is not a matter for the unrestrained discretion of the court, but rather is available only when "the petitioner shows a change of circumstances since the entry of the earlier decree." *Robbins v. Robbins*, 343 Mass. 247, 249, 178 N.E.2d 281, 282 (1961). The support judgment is intended to be a final determination of the rights of the parties absent a real, and not just apparent, change of circumstances. *Id.* at 249, 252, 178 N.E.2d 281. We do not believe that this restrained discretion to modify the support judgment renders the right to support so inchoate that it is not a right to property. Rather, we agree with the reasoning of *United States v. Taylor*, 254 F.Supp. 752, 756 (N.D.Cal.1966), which held that the federal tax lien attached to the beneficiary's interest under a spendthrift trust for support: the fact that the right has a variable value does not affect the conclusion that the tax lien attaches to the taxpayer's substantial and enforceable interest. "At most, it is a circumstance which may add to the practical problems of enforcing the lien." *Id.*

■ We therefore hold that the taxpayer's right to receive support payments from appellee is a right to property to which the federal tax lien, 26 U.S.C. § 6321, has attached, and that the government is entitled to an adjudication of competing claims and a decree foreclosing and enforcing the lien. 26 U.S.C. § 7403. We recognize, however, that the practical problems involved in enforcing this lien are substantial.

The district court has the power to adjudicate the merits of all claims to the property in question, 26 U.S.C. § 7403, and jurisdiction to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402. These sections give the district court the power to foreclose a lien on a debt, including a judgment debt, owing to the taxpayer by ordering the debtor to pay the government. *See* Mertens, Law of Federal Income Taxation, Vol. 9, § 54.53 at 216–17. *Cf. United States v. Taylor, supra*, 254 F.Supp. at 757 (foreclosing the lien on taxpayer's interest under a trust for support by directing the trustee to pay over to the government all amounts payable to the taxpayer up to the amount of the lien).

■ Special problems arise in this case both because the right to support is subject to modification, and because the federal courts have traditionally exercised limited jurisdiction in matters of domestic relations. *See Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir. 1974); Bator, Mishkin, Shapiro & Wechsler, *Hart & Wechsler's Federal Courts and the Federal System* 1189–92 (2d ed. 1973). The district court unquestionably would have the power, with 26 U.S.C. § 7402 as the basis of jurisdiction, to foreclose the tax lien and order appellee to pay to the government any amounts due under the support judgment up to the amount of the lien. Viewing the foreclosure as analogous to enforcement of the Massachusetts support judgment, however, raises the question of how to preserve appellee's right to seek modification of the support judgment before it is effectively enforced by foreclosure. Because the sup-

port judgment is subject to modification as to both arrearages and future payments, appellee must be given the opportunity to litigate the issue of modification before he can be compelled to pay over a specific sum under the judgment to the government. *Cf.* Restatement 2d of Conflict of Laws § 109 and Comment *c* ;[3] *Griffin v. Griffin,* 327 U.S. 220, 233–34, 66 S.Ct. 556, 90 L.Ed. 635 (1946).

The district court could perhaps consider the modification issue itself, but given the federal courts' express disclaimer of jurisdiction to determine an allowance of alimony as an original matter, *see Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859); *Federal Courts and the Federal System, supra,* at 1189–90, we think there are sounder alternatives. The district court could foreclose the lien and abstain from entering an enforcement order pending a determination by the state probate court of the present status of the support judgment. It might also be possible to enter a conditional order directing appellee to pay to the government what he would otherwise pay to the taxpayer under the support judgment. Such an order would prevent appellee from paying the taxpayer, thus fulfilling the government's interest in "immobilizing" the payments before they are received and dissipated by the delinquent taxpayer, *see* Note, *supra,* 77 Harv.L.Rev. at 1495, 1497, but would not of its own force compel him to pay the government: rather enforcement of the affirmative obligation would be by order of the Massachusetts probate court upon application of either the taxpayer or the government. *Cf. United States v. Mercantile Trust Co.,* 62 F.Supp. 837, 842 (D.Md.1945) (foreclosing lien against beneficiary's interest in spendthrift trust, but holding that the proper method of enforcement was for Collector to apply to the state court for an order against the trustee). These two approaches have the advantage of leaving the modification issue to the state court, but the disadvantage of subjecting the government's interest in actual collection to the state court as well. *Cf.* 26 U.S.C. § 7424 (government may intervene in state court proceeding affecting taxpayer's property and remove case to federal court); *see also Plumb, supra,* at 253. There may be other methods of enforcement than those we have considered. However, we have serious doubts that the solution arrived at by the court in *United States v. Russell, supra,* is proper. The court there enforced the lien only as to $10 of the $100 monthly payment due under the alimony decree. It has been held that there is a general equitable power to refuse to order a foreclosure sale when that is not an appropriate remedy, *see United States v. Boyd,* 246 F.2d 477, 480–81 (5th Cir. 1957), but there is no sale involved in enforcing the lien against alimony payments. Once it is established that the government has a valid lien against the taxpayer's right to receive support payments of a certain amount, a reduction in the amount solely for enforcement purposes is arguably a court-decreed exemption from levy. Under 26 U.S.C. § 6334(c), which provides that the statutory exemptions from levy shall be the only exemptions, we doubt that the court would have the power to do this.

■ Because the district court has not yet considered the problem of enforcement, which we believe involves a delicate balancing of the government's interest in collection, the state's interest in deciding matters of family law and policy, and appellee's interest in avoiding a spiraling liability to the government under a federal court decree and to the taxpayer under a modified support decree,[4] and because this issue was

---

**3.** "A court is free to recognize or enforce a judgment that remains subject to modification under the local law of the state of rendition", Restatement 2d of Conflict of Laws § 109(2) but "[p]resumably, the second court would violate due process if it were to enforce the judgment without having afforded the defendant an opportunity to litigate the question of modification . . . ." *Id.,* Comment *c.*

**4.** Appellee argued before us that, if we diverted support payments from his ex-wife, the taxpayer, to the government, the state probate court might well order him to pay an additional amount to the taxpayer. In effect the federal

not briefed or argued before us, we do not decide at this point what method of enforcement is proper.[5]  Having outlined some of the problems we see, and noting that there may well be others, we remand the case to the district court for further proceedings, if necessary, and entry of an appropriate decree foreclosing and enforcing the government's lien against the taxpayer's right to receive support payments from appellee.

*The judgment of the District Court dismissing the complaint against Owen M. Rye is vacated and the case is remanded with directions.*

decree would transfer the tax liability to appellee, instead of foreclosing a lien on the taxpayer's property.  We express no view on whether the foreclosure would be a "change of circumstances" under Massachusetts law justifying an increase in support payments to the taxpayer, *cf. Robbins v. Robbins, supra,* but this would be a consequence of state law that a federal court could not alter.  More disturbing is the chicken-and-egg problem posed by the fact that the federal lien attaches to after-acquired property, *see Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945), which might well include the taxpayer's right to additional sums under a subsequent modification of the support judgment.  However, we need not address this issue at this time.

5.  We note, in addition, that the government would have considerably more flexibility in reaching a compromise agreement with the taxpayer and appellee than the district court will have in framing an order.